*1255 OPINION.
Littleton:
It is admitted by petitioner’s counsel that the Commissioner has computed invested capital by proration of cash received from the date of the credit to the subscription account, while *1256 the petitioner contends that such subscriptions to stock were entirely-paid up on November 1, 1921, when the subscription letter of that date was written. There is no dispute as to when the payments in cash were actually made. The main question in the case rests on the proper interpretation to be placed on the subscription agreement or letter of November 1, 1921, addressed to petitioner and fully set out in our findings of fact.
Is that letter such evidence of indebtedness, in the light of all the other evidence in the case, as warrants the holding that it, in fact, constituted payment in full for stock subscribed and as such should be included in invested capital ?
Section 326 (a) of the Revenue Act of 1921 provides that the term “invested capital” for any year means, among other things, “(1) actual cash bona fide paid in for stock or shares; (2) actual cash value of tangible property, other than cash, bona fide paid -in for stock or shares, at the time of such payment * * *.”
Section 325 (a) defines the term “ tangible property ” to mean stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than the “ intangible property.”
The petitioner contends that the agreements of November 1, 1921, were “ tangible property ” and were “ evidences of indebtedness ” within the meaning of section 325 (a) of the Revenue Act of 1921, and should be included in invested capital at their cash value at that date.
The Commissioner disputes that and insists that the agreements contained are merely subscription agreements and are not “ evidences of indebtedness ” accepted in payment for stock within the meaning of the Revenue Act of 1921. The evidence shows that the same interests absolutely owned or controlled the Manhattan Trading Corporation and the petitioner.
The agreements of November 1, 1921, do not, on their face, purport to be “ payment ” in full for stock of petitioner and expressly provide: “we hereby severally agree to pay for such stock 10% thereof herewith, and the remainder at such times and in such installments as the Board of Directors of this company may, by resolution, require.”
The letter or agreement further states:
We, being the owners of all the capital stock of Manhattan Trading Corporation, a Delaware corporation, which is, or presently will be, placed into liquidation, for and in consideration of the premises, hereby sell, assign and transfer all our interest in such corporation, if, as and when the same is actually placed into liquidation unto Dieckerhoff, Raffloer & Co., Inc. but only for the purpose of securing the foregoing subscriptions, and this subscription shall be regarded as authority to the trustees in liquidation of Manhattan Trading *1257 Corporation to pay to you for our account any and all dividends in liquidation, payable to us, as such security.
The resolutions passed by the board of directors of petitioner on July 19, 1922, quoted in our findings of fact, refer to the agreement between petitioner and the persons who “ subscribed to preferred stock” of petitioner and “to secure such subscriptions, transferred to this corporation their respective interests in all dividends in liquidation up to the amount of their respective subscriptions.”
The resolutions further provided that the amounts going to the said subscribers of petitioner’s stock, as a result of distribution dividends in dissolution of Manhattan Trading Corporation, be “ credited upon the books of this corporation to such person on account of his subscription to preferred stock aforesaid,” and “that the subscription account of each of such persons be debited with interest at the rate of six per cent (6%) per annum on unpaid subscriptions.”
Besolutions of similar purport were passed by petitioner’s board of directors on November 30, 1922.
In view of the conditions imposed in the stock purchase agreements, the resolutions passed, and action taken thereunder, we are of the opinion that the agreements were tangible property, having actual cash value, paid in for stock and are such “evidences of indebtedness ” as justify including them in invested capital.
The agreements in question were intended and accepted as payment for stock. Stock was actually issued and delivered to the subscribers signing the same. The signers absolutely controlled the petitioner and the Manhattan Trading Corporation, the interest of the said signers in which were assigned to secure their subscriptions to petitioner’s stock. The persons purchasing the stock were financially responsible and the security back of their agreements was, in itself, almost if not entirely equal to the amount agreed to be paid for the stock issued. We think therefore that the stock purchase agreements had an actual cash value on November 21, 1921, equal to the par value of the stock issued therefor and should be included in invested capital in that amount. Cf. Haskell & Barker Car Co., 9 B. T. A. 1087.
We are of the opinion, therefore, that the Commissioner was in error in not treating the agreements to November 1, 1921, as proper “ evidences of indebtedness ” to be included in invested capital.
We are further of the opinion that the interest paid by the said stock subscribers should be treated, in the circumstances of this case, as taxable income, earned by the petitioner for extension of credit to such paying subscribers to stock, thus permitting them to delay making payments on their subscriptions until money to help pay same might be realized from assets of the Manhattan Trading Cor *1258 poration, assigned as security for such purpose. Baker-Vawter Co., 7 B. T. A. 594. This is what the Commissioner did.
Reviewed by the Board.

Judgment will be entered under Rule 50.